# IN THE COURT OF APPEALS OF IOWA

No. 24-0642
Filed July 24, 2024

IN THE INTEREST OF E.M. and T.M.,
Minor Children,

K.M., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley,
Judge.


A mother appeals from a child-in-need-of-assistance dispositional order.
**AFFIRMED.**


David R. Fiester, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

Robin O'Brien-Licht, Cedar Rapids, attorney and guardian ad litem for minor
children.


Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The mother appeals a child-in-need-of-assistance (CINA) dispositional order concerning E.M. (born 2020) and T.M. (born 2022). Finding the mother waived her claim for failure to cite legal authority and otherwise comply with the rules of appellate procedure, and concluding we would not provide relief even if the claim were fully briefed, we affirm.

## I. Background Facts and Proceedings

The mother has a lengthy history with the Iowa Department of Health and Human Services (HHS). In total, the mother has been the subject of more than twenty child abuse assessments, at least seven of which related to the children at issue in this appeal. The general subjects of the prior assessments involved substance abuse, domestic violence, lack of supervision, and unsanitary conditions. In January 2020, the mother's parental rights to two older children were terminated.

E.M. and T.M. both tested positive for tetrahydrocannabinol (THC) at birth. Both children also tested positive at least once for THC or marijuana while in the mother's care. And there were reports the mother was using marijuana while caring for them.

In 2024, police and HHS responded to the family home based in part on reports the mother was using marijuana around the children. Police smelled marijuana from the door, and the mother denied them entry to her room or the upstairs of the house. Police eventually obtained a search warrant and found a marijuana roach where the children would have access to it and additional marijuana in the mother's bedroom. The HHS worker described "at least a week

of urine and dog feces in the upstairs of the residence" and noted "[a]s many animals that could be found were removed from the home." HHS returned a founded abuse assessment for the mother's failure to provide proper supervision. And animal-neglect charges were filed regarding the pets' living conditions.

Another concern was the mother's on-again off-again relationship with the father, who perpetrated domestic violence against the mother and these children. The father was charged with offenses relating to domestic violence and child endangerment and no-contact orders were entered but no convictions followed— in part due to the mother's lack of cooperation with law enforcement. Despite the mother's "dozens of reports" regarding domestic violence and her telling others the children were afraid of the father, the mother has suggested the father move into her home and care for the children. And she communicates with him nightly and lets him use her vehicle.

HHS also had significant concerns about the mother's mental health. A 2018 mental-health evaluation showed multiple diagnoses and a more recent evaluation showed at least one. The consistent diagnosis was post-traumatic disorder (PTSD), and the record contains no explanation why some of the previous diagnoses—which tend to be chronic—were no longer listed in 2018. The mother's history also included mental-health hospitalizations both as a child and adult. And an earlier termination order documented similar struggles with mental health and unhealthy relationships.

The children were adjudicated CINA based on concerns regarding substance abuse, mental health, domestic violence, and unsanitary conditions in the home. At the dispositional hearing, an HHS worker stressed that the children

did not have the capacity to protect themselves from dangers created by the mother's mental-health problems or association with the father and his history of domestic violence. And the worker explained that, during meetings between her and the mother, the mother would "kind of place blame on others for the way things are or for what's happened."

The mother stressed that she had stopped using medical marijuana, had since then been compliant with drug-testing, and had been working on her mental health. She also said she had cleaned her house thoroughly. She acknowledged her long history with HHS and prior terminations and relayed a vow that she "would not make the same mistakes as [she] did with [her] older kids, and [she] would learn from what [she] had dealt with." She also confirmed the father's history of domestic abuse but claimed she did not "view [him] as an abuser" or fear future domestic violence. The juvenile court expressed concerns about the mother's honesty and her ability to maintain her positive changes.

For his part, the father admitted at the dispositional hearing he had previously lied to the court and falsely denied his intent to reignite the relationship. And he testified that he thought the children missed the mother. The juvenile court also expressed concerns about the father's honesty, as well as his history of domestic violence with other women.

At the conclusion of the dispositional hearing, HHS recommended the children be placed with the father under the protective supervision of the department assuming he did not move back in with the mother. The court orally ordered custody be placed with HHS for purposes of family foster care, that the mother participate in random-drug testing and manage her mental health, and that

she obtain a new psychological evaluation to address discrepancies between the 2018 evaluation and current treatment. The court also emphasized the case's ups and downs:

> The Court has seen this case cycle through several times. The relationship [between mother and father] cycling through several times is concerning. These children don't need to have a revolving door in their life, and so the Court's not going to grant discretion [for visits] too quickly because these are long-lasting situations that have been going on for a long time.

And the court recognized that the mother had made steps toward providing a safe and stable home for the children. But this was tempered by an observation there was much work yet to do and colored by the mother's past involvement with HHS. The juvenile court noted both "parents have historically been very non-compliant with expectations and services" and the mother "historically lacks any acceptance of responsibility for any situation, but chooses to blame others for lying or professionals for being 'incompetent' and not handling things correctly." The court opined the children "do not need to spend their lives in the chaos of their parents' dysfunctional relationship, exposed to substance use and unsanitary conditions." And the court confirmed removal and placement with HHS in its dispositional order, finding it likely the children would "be exposed to substance use, domestic violence, and [the parents'] unstable mental health" otherwise.

The mother appeals, but the father does not.

## II.      Standard of Review

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.*

### III. Discussion

The mother's petition on appeal includes exactly two citations to authority, both establishing the standard of review. The remainder of the petition is bereft of any citation of legal authority—no cases, statutes, or anything else. There is no heading devoted to "the legal issues presented for review," though there are perhaps a few sentences of unsupported legal argument toward the end of the filing. *See* Iowa R. App. P. 6.1401—Form 5, § 8 (requiring a section that "[s]tate[s] the legal issues presented for appeal" and "state[s] what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your petition on appeal"). Although we are sympathetic to the expedited deadlines faced by juvenile attorneys in these cases, we cannot say the petition filed by the mother here comes close to satisfying the rules of appellate procedure and the requirement to cite legal authority. *See id.* (requiring "supporting legal authority for each issue raised" and admonishing that "[g]eneral conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable"); Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). It is difficult to imagine a way we can review this appeal without—to one extent or another—undertaking the mother's legal research and advocacy for her. And we are forbidden from doing so. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."); *see also King v. State*, 818 N.W.2d 1, 48 (Iowa 2012) (Wiggins, J.,

dissenting) ("Our law clerks and judges should not be doing the work of counsel . . . ."). We therefore summarily affirm this CINA appeal.

But we note, in the interests of completeness, we would have affirmed on the merits if we were permitted or inclined to shore up the mother's factual argument with legal authorities. As best we can tell, her core contention is that "all concerns regarding [her ability to provide a safe and stable home] were addressed and were well under control by the time of disposition." Suffice to say, if we reached the merits we would be convinced on our de novo review that—at minimum—the concerns regarding domestic violence remain unresolved and justify continued removal from the mother and custody with HHS given the mother's inability to recognize the danger posed by a domestic abuser, her unwillingness to end her relationship with the father, and her failure to demonstrate protective capacity for these children. *See* Iowa Code § 232.102(4)(a) (2024).

**AFFIRMED.**